FILED

2015 SEP 23 PM 3: 16

U.S. DISTRICT COURT
N. DISTRICT OF OHIO
CLEVELAND

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) INDICTMENT |
| Plaintiff, | ) |
| | ) 1: 15 CR 355 |
| v. | ) CASE NO. _____ |
| | ) Title 18, Sections 1349, 1001, |
| ASHWANI ADYA, | ) United States Code |
| aka EDDIE ADYA, | ) |
| | ) JUDGE NUGENT |
| Defendant. | ) |

The Grand Jury charges:

### General Allegations

At all times material to this Information:

Relevant Persons and Entities

1. Defendant ASHWANI ADYA, aka EDDIE ADYA ("ADYA") was a businessman who owned a retail food and beverage business in the Lee-Harvard area of the City of Cleveland.

2. The City of Cleveland, a municipal corporation and political subdivision duly organized under the constitution and laws of the State of Ohio, entered into grant agreements, through its Director of Economic Development, with entities involved in projects determined to be in the public interest and in the best interest of the City of Cleveland.

3. Nonprofit 1 was a community organization which promoted commercial revitalization and development in the Lee-Harvard area of the City of Cleveland.

4. Lawrence Payten ("Payten") was employed by Nonprofit 1 to facilitate its work in the Lee-Harvard area of the City of Cleveland.

5. Business 1 was a limited liability company registered with the Ohio Secretary of State on or about November 13, 2007, for the purpose of engaging in the retail food and beverage business in the Lee-Harvard area of the City of Cleveland.

6. Lejon C. Woods ("Woods") was employed by the City of Cleveland, Office of Equal Opportunity ("OEO"), as a Contract Compliance Officer. Woods' duties included evaluating contracts for OEO compliance or penalties for failure to comply with the City of Cleveland's OEO program regulations.

City of Cleveland Funding and OEO Program Goals

7. The City of Cleveland awarded funds related to certain construction or rehabilitation projects within the city. The recipients of such awards were subject to City of Cleveland OEO program goals which included the hiring of certain percentages of minority business enterprises, disadvantaged business enterprises, female business enterprises, and workers who were also City of Cleveland residents.

8. City of Cleveland funding awards included Neighborhood Capital Funds ("NCF"). Such funds were authorized by ordinances passed by City Council and provided to construction and rehabilitation projects determined by City Council to be in the public interest. Businesses which qualified for NCF entered into a Neighborhood Capital Funds Grant Agreement ("NCFGA") with the City of Cleveland in which the businesses agreed to use good faith efforts to achieve the OEO goals set forth in the NCFGA.

9. On or about May 10, 2010, the City of Cleveland entered into an NCFGA with ADYA, acting as an authorized representative of Business 1, relating to the construction of a retail food and beverage business to be located in the Lee-Harvard area of the City of Cleveland. The NCFGA included a "Cleveland Area Business Code Requirement" provision which set OEO subcontractor participation goals of 15% for minority business enterprises, 7% for female businesses enterprises, and 8% for Cleveland Area Small Businesses.

10. After grant recipients finished their construction and rehabilitation projects, the City of Cleveland, through its OEO Contract Compliance Officers, determined if the businesses achieved the subcontractor participation goals set forth in the NCFGA or whether the business would forfeit any outstanding NCF for failure to reach the subcontractor participation goals.

11. As a Contract Compliance Officer, Woods had access to and control over records and reports relating to a grant recipient's compliance with the subcontractor participation goals set forth in an NCFGA.

## COUNT 1
**(Conspiracy to Commit Honest Services Mail Fraud, 18 U.S.C. § 1349)**

12. Paragraphs 1-11 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

### THE CONSPIRACY

13. From in or around November 2009, through on or about August 24, 2010, the exact dates being unknown to the Grand Jury, in the Northern District of Ohio, Eastern Division and elsewhere, Defendant ASHWANI ADYA, aka EDDIE ADYA, Lawrence Payten (not charged herein), Lejon C. Woods (not charged herein), and others known and unknown to the Grand Jury, did knowingly and intentionally combine, conspire, confederate, and agree with each other to commit an offense against the United States; that is, to knowingly devise and intend to

devise a scheme and artifice to defraud and deprive the City of Cleveland and its citizens of their right to the honest and faithful services of Woods, through bribery and kickbacks and the concealment of material information related thereto, and for the purpose of executing such scheme and artifice, to cause matters to be placed in any post office and authorized depository for mail matter to be sent and delivered by the United States Postal Service and private and commercial interstate carrier, in violation of Title 18, United States Code, Sections 1341 and 1346.

## OBJECT OF THE CONSPIRACY

14. It was the object of the conspiracy that Woods secretly used his official position to enrich himself and Payten, by agreeing to accept and by accepting U.S. currency from ADYA in exchange for favorable official action, and that ADYA, through Woods and Payten, enriched himself and Business 1 by secretly obtaining favorable official action for Business 1 through corrupt means.

## MANNER AND MEANS

It was part of the conspiracy that:

15. Woods solicited and accepted U.S. currency from ADYA in exchange for favorable official action by Woods with respect to the OEO compliance for ADYA's construction project.

16. Payten solicited and accepted U.S. currency from ADYA, and coordinated the payments of U.S. currency from ADYA to Woods.

17. Woods provided favorable official action for the benefit of ADYA as requested.

18. The conspirators took steps to hide, conceal, and cover up their activity and the nature and scope of Woods' dealings with ADYA and Payten.

ACTS IN FURTHERANCE OF THE CONSPIRACY

19.     On or about November 13, 2009, ADYA, Payten, and Woods met at Cleveland City Hall. ADYA and Payten told Woods that ADYA was not going to meet the City of Cleveland's OEO subcontractor requirements and asked Woods to help them cover up their lack of compliance so that ADYA would still receive the NCF disbursement from the City of Cleveland.

20.     Approximately two weeks later, Woods met with ADYA and Payten at a local restaurant. At the meeting, ADYA gave Woods the first of two payments of approximately $1,500 in U.S. currency to ensure that his failure to meet the city's requirements on the project would not prevent or delay the final disbursement of NCF.

21.     ADYA promised Woods another $1,500 when the project was complete and also promised Payten approximately $2,500 for facilitating the arrangement between ADYA and Woods.

22.     Woods ensured that ADYA received the $25,000 in NCF from the City of Cleveland, despite the failure of ADYA's construction project to meet the subcontractor participation goals set forth in the NCFGA.

23.     On or about August 20, 2010, ADYA received an NCF grant check in the amount of $25,000, which the City of Cleveland sent by U.S. Postal Service, private, or commercial interstate carrier.

24.     On or about August 20, 2010, Payten spoke with Woods and said, "Just wanted to let you know that, uh, the check finally came today." Woods responded, "Oh, outstanding. That is, that is, that is beautiful, you have no idea how good it is to hear that." Payten stated, "[H]e's gonna put it into the account, he said if it doesn't clear by tomorrow, he said he would definitely

have it available on Monday," August 23rd. Woods further stated, "So he [ADYA] will be able, so you'll be good, he'll take care of you and what not, and everything?" Payten responded, "He [ADYA] gonna take care of everything." Woods replied, "Outstanding." Payten later stated, "Yeah, so, so I, out of all of it all I'm end up with is about $2,500, but I'm happy with just that."

25. On or about August 24, 2010, ADYA, Payten, and Woods met at Business 1. During the meeting, ADYA gave Woods approximately $1,500 in U.S. currency.

26. After ADYA gave Woods the U.S. currency, Woods asked ADYA, "Now what's this here?" ADYA responded, "Fifteen, fifteen hundred, you wanna count it?" Woods said, "Oh no, no that's what you said, well I thought uh, I thought over all we were doing five?" ADYA responded, "un-huh." Woods responded, "OK, no if that's what it is that's fine, trust me I'm appreciative of anything right now, cause it's been, it's been ugly . . . hey, so that's fantastic."

27. The parties then discussed that ADYA planned to do several more construction projects in the City of Cleveland. ADYA stated that he would go through Payten in the future to facilitate projects with the City of Cleveland.

<u>EXECUTION OF THE SCHEME</u>

28. On or about August 18, 2010, in the Northern District of Ohio and elsewhere, ADYA, Payten, Woods, and others, for the purpose of executing the above-described scheme and artifice, caused a check in the amount of $25,000 to be delivered and sent through the United States mail, to Business 1 in the Lee-Harvard area of the City of Cleveland.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 2
### (False Statement to Law Enforcement, 18 U.S.C. § 1001)

29. Paragraphs 1-11 and 13-28 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

30. On or about June 18, 2015, in the Northern District of Ohio, Eastern Division, Defendant ASHWANI ADYA, aka EDDIE ADYA, knowingly and willfully made material false statements to Special Agents of the FBI in a matter within the jurisdiction of the executive branch of the Government of the United States, that is:

(1) ADYA stated he did not pay cash to anyone employed with the City of Cleveland;

(2) ADYA stated that ADYA paid money to Payten at the meeting at Business 1 after construction was complete, but not to the city employee; and

(3) ADYA stated that he understood that it was a crime to lie to the interviewing agents and that he was completely truthful with the interviewing agents.

31. ADYA well knew when he made those statements to Special Agents of the FBI that the statements were false, because as Defendant then knew, he had paid $1,500 cash to an employee of the City of Cleveland, i.e., Woods, on two separate occasions, including in or around November 2009, and on or about August 24, 2010.

All in violation of Title 18, United States Code, Section 1001.

A TRUE BILL.

Original document - Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.